UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------------------------x
KELLI D. HAKE, et al.,                                          :
                                                                :
                        Plaintiffs,                             :          Case No. 17-cv-114 (TJK)
                                                                :
-against-                                                       :
                                                                :
BANK MARKAZI JOMHOURI ISLAMI IRAN, et al.,    :
                                                                :
                        Defendants.                             :
------------------------------------------------------------------------x

**NOTICE SETTING FORTH THE GROUNDS FOR ADMISSION INTO EVIDENCE OF
<u>EXHIBITS SUPPORTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT</u>**

      Pursuant to the Court's October 6, 2020 Minute Order, Plaintiffs respectfully submit this

notice identifying the exhibits they seek to admit into evidence in conjunction with their Proposed

Findings of Fact and Conclusions of Law ("PFFCL"), together with the legal basis therefor. Except

for the exhibits to the sworn expert declarations of Dr. Patrick Clawson and Katherine Bauer, the

exhibits are all identified as "PX-___." These exhibits include:

1.  Nearly all of the exhibits presented to the court in *Karcher v. Islamic Republic of Iran*, No. 16-cv-232-CKK, except for those relating to damages, which Plaintiffs will present to this Court at the appropriate stage. *See* Oct. 16, 2020 Minute Order. These are marked as PX-1 through PX-198; to ease the Court's review of the submissions and decisions in *Karcher*, Plaintiffs here retain the numbering these exhibits had in *Karcher*.

2.  The exhibits unique to *Hake*, marked PX-199 through 231.

3.  The exhibits to the Clawson (Clawson Ex. A) and Bauer Declarations (Bauer Exs. A-F).

All of these exhibits are listed in the exhibit list annexed hereto as **<u>Exhibit A</u>**. The list provides the

PX number, exhibit description, whether it was admitted in *Karcher*, whether it is under seal by

order of the *Karcher* court or this Court. In support of the PFFCL, Plaintiffs will also be providing

the Court with the transcripts from the *Karcher* trial.

This Notice provides the basis for admitting the exhibits offered for admission. For the Court's convenience, this Notice also identifies exhibits that are not offered for admission, but instead only support expert opinion or of demonstrative value. In support of Plaintiffs' proffer of exhibits for admission, this Notice is supported by three declarations:

> (1) the declaration of Patrick J. Duprey, counsel for the *Karcher* and *Hake* plaintiffs (the "Duprey Decl.");
>
> (2) the declaration of *Karcher* plaintiffs' expert Lieutenant General (Ret.) Michael L. Oates (the "Oates Decl."); and
>
> (3) the declaration of *Karcher* plaintiffs' expert Colonel (Ret.) Leo Bradley (the "Bradley Decl.").

The Duprey Declaration includes and updates the declaration of Michael J. Radine (the "Radine Decl.") submitted by the *Karcher* plaintiffs, along with the Oates and Bradley declarations, in support of those plaintiffs' motion for pre-trial admission of certain exhibits. *See Karcher*, Pls.' Mot. to Pre-Admit Evidence, ECF No. 61. That motion was in large part granted in an order annexed hereto as **Exhibit B** (specifically, the order admitted all proffered exhibits, except for expert reports which were admitted at trial).

Specifically, the Duprey declaration updates the Radine Declaration to include (1) exhibits admitted in *Karcher* during trial or after trial (*see* Dec. 11, 2018 Minute Order, *Karcher*); (2) exhibits provided to the *Karcher* court but never offered for admission (no exhibits offered for admission were denied admission); and (3) exhibits unique to *Hake*.[1]

Also accompanying this Notice is an exhibit list itemizing all the exhibits Plaintiffs are providing to the Court. For clarity's sake, Plaintiffs have denoted whether an exhibit was

---

[1]     The Duprey Declaration also updates URLs originally provided in the Radine Declaration that show that exhibits found online came from trustworthy websites for authentication purposes.

previously admitted in *Karcher*, is offered here for the first time, or is not offered for admission (e.g., demonstrative exhibits or exhibits only relied upon by experts).

## I. THE FOREIGN SOVEREIGN IMMUNITIES ACT GIVES THE COURT AUTHORITY TO ADJUST EVIDENTIARY REQUIREMENTS TO ALLOW PLAINTIFFS TO ESTABLISH THEIR RIGHT TO RELIEF.

In a case brought under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 18 U.S.C. § 1605A, Plaintiffs must produce admissible evidence proving their claims. *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1049 (D.C. Cir. 2014) (citation omitted). However, "the district court also has an unusual degree of discretion over evidentiary rulings in a FSIA case against a defaulting state sponsor of terrorism," and courts "have allowed plaintiffs to prove their claims using evidence that might not be admissible in a trial." *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017), *vac'd on other grounds and remanded sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020). *See also Owens*, 864 F.3d at 785 ("noting 'courts have the authority—indeed, we think, the obligation—to adjust evidentiary requirements to differing situations' and admitting affidavits in a FSIA default proceeding") (citing *Han Kim*, 774 F.3d at 1048-51). The *Karcher* court (which admitted every exhibit proffered for admission) likewise noted "the rather liberal evidentiary standards applicable to FSIA cases in default posture, particularly when the foreign sovereign has been recognized as a sponsor of terrorism." 396 F. Supp. 3d 12, 16 (D.D.C. 2019).

In sum, "Section 1608(e) does not require a court to step into the shoes of the defaulting party and pursue every possible evidentiary challenge; only where the court relies upon evidence that is both clearly inadmissible and essential to the outcome has it abused its discretion. This is part of the risk a sovereign runs when it does not appear and alert the court to evidentiary problems." *Owens*, 864 F.3d at 785-86.

Finally, although most of Plaintiffs' exhibits are admissible on one or more grounds as explained below (or are offered for their demonstrative value), nearly all of them are relied upon by the experts who submitted evidence here and in *Karcher*. Thus, even if a given exhibit were not itself admissible, it would permissibly support the experts' reports under Fed. R. Evid. 703: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."

## II.   EXHIBITS OFFERED FOR ADMISSION

All of the exhibits offered for admission are self-evidently relevant, *see* Fed. R. Evid. 402, as they all relate to Iran's influence in and conduct of a terror campaign in Iraq, the U.S. response to that terror campaign, the role of Defendants in the financing of that campaign, and the bellwether attacks. As noted above, Plaintiffs have provided the source for most exhibits for authentication purposes, but authentication is also supported by Plaintiffs' experts' reliance on the exhibits cited in their reports, as they are "facts and data" typically relied on by experts in their respective fields. Fed. R. Evid. 703.

Plaintiffs offer exhibits for admission in several categories:

A.   Public records admissible under the public records exception to hearsay in Fed. R. Evid. 803(8);

B.   Vital records admissible pursuant to Fed. R. Evid. 803(9);

C.   Expert reports prepared for *Karcher* and *Hake*;

D.   Testimony in the form of sworn declarations prepared for *Karcher* and *Hake*;

E.   Photographs and videos;

F.   Business records created by third parties; and

G.   Statements made against penal interest or by Defendants' co-conspirators.

H.   Finally, exhibits that are presented to the Court, but not for admission (either because they are demonstratives or solely relied upon by experts).

## A.   Exhibits Admissible Pursuant to Fed. R. Evid. 803(8)

Plaintiffs seek to admit the following types of government records:

1.   Treasury Department and State Department designation lists and accompanying Executive Orders (Duprey Decl. ¶¶ 2-7).

2.   Treasury and State Department Press Releases accompanying designations, which contain factual findings from investigations (Duprey Decl. ¶¶ 8-44).

3.   State Department Country Reports, setting forth factual findings as to various countries, including Iraq and Iran (Duprey Decl. ¶¶ 45-47).

4.   Interrogation Reports, Detainee Documents and Combined Intelligence Operations Center ("CIOC") Reports, consisting of matters observed by military personnel with a duty to report them, and factual findings from a legally authorized investigation (which also reflect statements against interest and statements made by Defendants' co-conspirators, addressed in section G, *infra*) (Duprey Decl. ¶¶ 48-60).

5.   Executive Branch Reports, prepared as required by law, setting forth factual findings concerning the U.S. military's involvement in Iraq (Duprey Decl. ¶¶ 61-77; Bradley Decl. ¶ 8; Oates Decl. ¶¶ 6-9).

6.   Investigative records prepared by military personnel investigating a terrorist attack or other significant activity involving U.S. forces in Iraq (Duprey Decl. ¶¶ 78-110).

7.   Records setting forth the activities of various government offices (Duprey Decl. ¶¶ 111-26; Bradley Decl. ¶¶ 6, 7, 9-15; Oates Decl. ¶¶ 10-11).

8.   Weekly reports from the Multi-National Force – Iraq ("MNF-I") Commander to the Secretary of Defense setting forth the activities of the U.S. military in Iraq, along with matters observed by military personnel with a duty to report them, and factual findings from legally authorized investigations (Duprey Decl. ¶¶ 127-31).

9.   Advisories and Rules issued by the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the U.S. Treasury Department (Duprey Decl. ¶¶ 132-35); and

10. Factual statements drafted by government agencies reflecting findings from legally authorized investigations and included in settlement agreements or consent orders (Duprey Decl. ¶¶ 136-37).

Federal Rule of Evidence 803(8) provides a broad approach to admissibility, whereby "[a] record or statement of a public office" is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness," if:

> (A) it sets out:
>
> > (i) the office's activities;
> >
> > (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> >
> > (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Plaintiffs seek admission of 150 exhibits that fall within Rule 803(8)(A)'s definition of government records. *See* Duprey Decl. ¶¶ 2-137; Bradley Decl. ¶¶ 6-15; Oates Decl. ¶¶ 6-9.

As the court stated in *Owens v. Republic of Sudan,* "[p]ursuant to the 'broad approach to admissibility' under Rule 803(8), a court may also admit 'conclusion[s] or opinion[s]' contained within a public record." 864 F.3d at 792 (*citing Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988)). *See also Beech Aircraft,* 488 U.S. at 170 ("[a]s long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report."). As shown below, the information contained in Plaintiffs' proffered evidence is trustworthy, and Defendant Iran has not appeared in this action to argue otherwise. *See, e.g.*, *Union Pac. R.R. Co. v. Kirby Inland Marine, Inc. of Miss.*, 296 F.3d 671, 679 (8th Cir. 2002) (burden of showing untrustworthiness is on party opposing admission); *Owens*, *supra* (same). Accordingly, the proposed exhibits should be admitted in their entirety.

Further, a government report is not rendered inadmissible because it contains a layer of hearsay from unidentified witnesses. *Holliday v. J S Exp., Inc.,* No. 12-cv-1732 (ERW), 2013 WL 2395333, at \*5 (E.D. Mo. May 30, 2013). An agency investigator's reliance on hearsay evidence does not render the report itself untrustworthy. *See id. See also Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1309-10 (5th Cir. 1991) ("[M]any government reports, as with many expert witnesses, have to rely in part on hearsay evidence, and the reports are not generally excluded for this reason."). This conclusion is guided by Fed. R. Evid. 703, which, as stated above, allows experts to rely on otherwise inadmissible facts to reach their opinions if experts in that field would reasonably rely on those facts in forming an opinion on that subject. Accordingly, "[t]here is no reason that government officials preparing reports do not have the same latitude." *Holliday*, 2013 WL 2395333, at \*5 (*citing Moss*, 933 F.2d at 1310). In *Holliday*, the court held that "regardless of whether the [Department of Labor's] conclusions were drawn from the statements of others, it does not render the Report inadmissible under Federal Rule of Evidence Rule 803(8)." *Id.*

### 1. Treasury and State Department Designations and Accompanying Executive Orders Are Admissible Under FRE 803(8).

Plaintiffs seek admission of lists of individuals and entities designated by the Treasury Department and State Department. Both the Treasury Department and State Department designate individuals and organizations under several Executive Orders and statutes[2] as, *inter alia*, having links to international terrorism, weapons proliferation, and the sponsorship of violence in Iraq. For instance, Executive Order 13224 (Sept. 23, 2001) authorizes both the Secretary of State and the Secretary of the Treasury to designate individuals and entities as "Specially Designated Global

---

[2]      These include, but are not limited to, Executive Orders 13224, 13382, and 13438, and Section 6(j) of the Export Administration Act, Section 40 of the Arms Export Control Act, Section 620A of the Foreign Assistance Act, and Section 219 of the Immigration and Nationality Act.

Terrorists" if the agencies make certain factual findings. These agencies publish lists identifying designated individuals and entities, which set forth the agencies' "activities," and are the result of "factual findings from a legally authorized investigation" and are therefore admissible under Fed. R. Evid. 803(8).[3]

Plaintiffs seek to admit six exhibits listed in Duprey Decl. ¶¶ 2-7 that fall within this category. A representative example is PX-1, the State Department's list of four countries designated as state sponsors of terrorism pursuant to Section 6(j) of the Export Administration Act, Section 40 of the Arms Export Control Act, and Section 620A of the Foreign Assistance Act.

## 2.  Treasury and State Department Press Releases Are Admissible Under FRE 803(8).

When the U.S. Treasury Department or State Department make a designation described above, they frequently issue a formal press release announcing the designation and providing some of the underlying unclassified factual findings that form the predicate for the designation. These press releases set forth the agencies' "activities" and present "factual findings" from an authorized investigation.

Governmental press releases that "contain factual findings from an investigation" "satisfy the criteria of Rule 803(8)." *Moses v. Westchester Cnty. Dep't of Corr.*, No. 10-cv-9468 (ER), 2017 WL 4386362, at *11 (S.D.N.Y. Sept. 29, 2017), *aff'd*, 739 F. App'x 66 (2d Cir. 2018). *See also Washington-El v. Beard*, 08-cv-1688, 2013 WL 706194, at *4 (W.D. Penn. Feb. 26, 2013) ("the [Department of Justice] press release falls under the hearsay exception set out in Federal Rule of Evidence 803(8) for public records[.]"); *General Mills Operations, LLC v. Five Star Custom*

---

[3]      The lists are also judicially noticeable. *See Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 68 (D.D.C. 2014) ("Judicial notice is taken, too, of the Treasury publication in the Federal Register, *i.e.,* the designation of Anwar Al–Aulaqi as a Specially Designated Global Terrorist due to the fact that he was a key leader of AQAP.").

*Foods, Ltd.*, 703 F.3d 1104, 1108-09 (8th Cir. 2013) (Dep't of Agriculture press release as to beef safety admissible as it set out findings pursuant to authority granted by law); *see generally Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93 (D.D.C. 2015) (relying on both agency press releases and State Department reports in a 28 U.S.C. § 1605A case).

Plaintiffs seek to admit 37 exhibits listed in Duprey Decl. ¶¶ 8-44 that fall within this category. A representative example is PX-102, the Treasury Department's November 19, 2012 notification of the designation of Hezbollah commander Ali Musa Daqduq for his responsibility for American deaths in Iraq in connection with the January 20, 2007 attack in Karbala, pursuant to E.O. 13224.

### 3. State Department Country Reports on Terrorism Are Government Records Admissible Under Rule 803(8).

The State Department submits Country Reports on Terrorism to Congress in compliance with 22 U.S.C. § 2656f. Courts have repeatedly found State Department County Reports admissible as government records. "[T]here is little doubt that the Country Reports constitute 'factual findings.' Moreover, the Reports are certainly gathered pursuant to legal authority: federal law requires that the State Department submit the Reports annually to Congress." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000) (internal citations omitted). *See also Owens*, 864 F.3d at 792-93 (holding that State Department "reports fit squarely within the public records exception" and were therefore admissible under Rule 803(8)); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1411 (9th Cir. 1995) (admitting a State Department annual report on terrorism that stated that Iran was a continuing state sponsor of terror). Plaintiffs seek admission of PX-18, which consists of the State Department's Country Reports for Terrorism for the years 2006-2012.

### 4. Interrogation Reports Consist of Matters Observed by Military Personnel with a Duty to Report Them, and Factual Findings from a Legally Authorized Investigation, and Reflect Statements Against Penal Interest.

Plaintiffs seek admission of interrogation reports, which summarize statements detainees provided while in U.S. military custody. These include the Tactical Interrogation Reports of Qais al-Khazali, founder of the Iranian-backed, Shi'a Iraqi militia group Asa'ib Ahl al-Haq ("AAH"), and detainee interrogation reports that have been collected as part of the U.S. Military Academy's online "Harmony Program." These reports include detailed accounts of Iraqi and Iranian detainees acknowledging Iran's and Hezbollah's support for Iraqi Shi'a terrorist groups that target U.S. Forces.

Plaintiffs also seek admission of investigative reports from the Combined Intelligence Operations Center ("CIOC"), an element of the U.S. Army's Criminal Investigation Command. As shown above, an investigator's conclusions that rely on hearsay statements are admissible, *see Moss*, *supra*, and the underlying statements in the proffered exhibits are themselves admissible as statements against penal interest. Plaintiffs seek to admit the following records:

### a. Tactical Interrogation Reports

Plaintiffs seek admission of the Tactical Interrogation Reports listed in Duprey Decl. ¶¶ 48-49. A representative example of these records is PX-81, which consists of Tactical Interrogation Reports of Qais al-Khazali produced by the U.S. Army's Litigation Division pursuant to requests made through legal process. As noted *infra* in section F, statements in interrogation reports may also be statements against penal interest and statements of Defendants' co-conspirators. For instance, in PX-81 at Bates 01191, Khazali ("Detainee") admitted to approving a plan for the January 20, 2007 Karbala attack.

**b. Detainee Documents**

Plaintiffs seek admission of documents pertaining to detainees Qais al-Khazali and Laith al-Khazali, leaders of AAH, listed in Duprey Decl. ¶¶ 50-58. A representative example of these records is PX-56, a declassified memorandum from Lieutenant General Stanley McChrystal to the Commanding General, MNF-I, regarding detainee Qais al-Khazali.

**c. CIOC Reports**

Plaintiffs seek admission of the CIOC reports listed in Duprey Decl. ¶¶ 59-60. A representative example of these records is PX-83, which is a memorandum regarding the debriefings of Qais al-Khazali and other detained terrorists, dated April 8, 2007, produced by the U.S. Army's Litigation Division pursuant to requests made through legal process.

> **5. Executive Branch Reports to Congress Setting Forth the Activities of, and Factual Findings Concerning, the U.S. Military in Iraq Are Government Records Admissible Under Rule 803(8).**

Executive Branch agencies submit reports to Congress pursuant to various statutes, *see* Duprey Decl. ¶¶ 61-77, and are public records setting forth agencies' activities, matters observed while under a legal duty to report, and factual findings from legally authorized investigations. Plaintiffs seek to admit the following records:

**a. Department of Defense Reports**

Plaintiffs seek admission of the Department of Defense reports listed in Duprey Decl. ¶¶ 61-69. A representative example of these documents is PX-35, a report titled "Measuring Stability and Security in Iraq," submitted to Congress in March 2007, pursuant to Section 9010 of the U.S. Department of Defense Appropriations Act of 2007, P.L. 109-289.

### b. Director of National Intelligence Reports

Plaintiffs seek admission of the Director of National Intelligence reports listed in Duprey Decl. ¶¶ 70-73. A representative example is PX-16, the Annual Threat Assessment for the Senate Select Committee on Intelligence, dated February 2, 2006.

### c. Reports Setting Forth the Activities of Counter-Improvised Explosive Device Agencies and Agency Components

Plaintiffs seek admission of the six government reports listed in Duprey Decl. ¶ 74, Oates Decl. ¶¶ 6-9 and Bradley Decl. ¶ 8. These reports set forth the activities of counter-improvised explosive device ("C-IED") agencies such as the Department of Defense's Joint Improvised Explosive Device Defeat Organization ("JIEDDO"). A representative example is PX-49, JIEDDO's 2008 Annual Report (erroneously referred to as PX-48 in the Oates Decl.).

### d. Other Executive Branch Reports

Plaintiffs seek admission of other Executive Branch reports listed in Duprey Decl. ¶¶ 75-77. A representative example is PX- 21, the Benchmark Assessment Report dated September 14, 2007, submitted by the President to Congress in accordance with Section 1314 of the U.S. Troop Readiness, Veterans' Care, Katrina Recovery, and Iraq Accountability Appropriations Act of 2007, P.L. 110-28.

### 6. Investigative Records Prepared by Military Personnel Investigating a Terrorist Attack or Other Significant Activity Involving U.S. Forces in Iraq Are Government Records Admissible Under Rule 803(8).

Plaintiffs seek admission of records created by U.S. military personnel while performing legally authorized investigations and setting forth matters observed while under a legal duty to report. Documents in this category include:

### a.  U.S. Army Reports of Proceedings by an Investigating Officer

Plaintiffs seek admission of investigation reports ("AR 15-6 reports"), listed in Duprey Decl. ¶¶ 78-83. These reports are created if a U.S. Army service member is killed or injured, pursuant to Army Regulation 15-6. This regulation is the basis for investigations requiring detailed gathering and analysis of evidence and making recommendations based on findings. It provides for collecting documentary and physical evidence and obtaining witness testimony. A representative example is PX-94, which is an AR 15-6 report regarding the death of Plaintiffs' decedents Christopher Hake, Jose Rubio, Andrew Habsieger, and George Delgado.

### b.  In-Theater U.S. Military Investigative Reports, Which Include Significant Activity ("SIGACT") Reports, Weapons Intelligence Team ("WIT") Reports, Combined Explosives Exploitation Cell ("CEXC") Materials, Explosive Ordnance Disposal ("EOD") Storyboards, and Combined Joint Task Force Troy ("CJTF Troy") Materials.

Plaintiffs seek admission of in-theater investigative reports, which consist of one or more of the component reports identified above. These are:

- SIGACT reports set forth findings following "significant activity," which includes attacks on U.S. Forces and interdictions of Hezbollah and Islamic Revolutionary Guard Corps ("IRGC") agents in Iraq. Also included within this category are Defense Department summaries of multiple SIGACTs and other reports, sometimes called "roll-ups."

- WIT reports provide counter-improvised explosive device intelligence from the collection, analysis and tactical exploitation of materials recovered from attack sites.

- CEXC was the U.S. military's only in-theater forensic laboratory focused on extracting information from evidence obtained from captured or detonated improvised explosive devices ("IEDs"). CEXC reports analyze, *inter alia*, the chemical signature of explosives, unique markings on electronic components, and biometric data left on IEDs, such as fingerprints and DNA.

- EOD storyboards are created after an EOD response and detail the specific information that pertains to the incident. Storyboards include photos, cardinal directions, emplacement methods, type and size of explosive ordnance, functioning and firing of the device, and other pertinent information.

- CJTF Troy exercised command and control of specialized Joint Counter-IED forces to neutralize the IED threat. CJTF personnel prepared materials following an investigation of an attack to develop intelligence to defeat IED networks.

The exhibits Plaintiffs seek to admit, listed in Duprey Decl. ¶¶ 84-104, each contain one or more of the aforementioned records, prepared pursuant to Army regulations and applicable law. A representative example is PX-129, which is a report regarding the March 23, 2008 attack in which Andrew Habsieger, Christopher Hake, and George Delgado were killed.

### c. Casualty Reports and Award Announcement

Plaintiffs seek admission of five casualty reports, PX-105, 124, 140, 145, and 165. These reports are prepared as a matter of course following the injury or death of a U.S. service member. These reports include two types: "Reports of Casualty" (U.S. Army "DD Form 1300"), and reports sent and updated as email chains titled "casualty reports." Both provide details on injured service members to U.S. military personnel. Plaintiffs also offer for admission the announcement that the Silver Star was awarded to estate Plaintiff Johnathan Millican for sacrificing his life "to protect his friends and comrades" during the January 20, 2007 attack in Karbala (PX-164).

### 7. Records Setting Forth the Activities of Government Offices Are Government Records Admissible Under Rule 803(8).

Plaintiffs seek admission of records and statements that set forth a government office's activities, such as Army manuals, memoranda from the MNF-I Commander in Iraq to the Secretary of Defense, memoranda from the Secretary of Defense, statements by Brigadier General Kevin Bergner, the Deputy Chief of Staff for MNF-I, and records pertaining to the capture of Ali Musa Daqduq. These exhibits are listed in Duprey Decl. ¶¶ 111-26, Oates Decl. ¶¶ 10-11, and Bradley Decl. ¶¶ 6-7, 9-15. Documents in this category include:

### a.  U.S. Military Manuals, Guidelines and Handbooks

A representative example of military manuals, guidelines, and handbooks is PX-171, an ORSA [Operations Research/Systems Analyst] "Handbook for the Senior Commander," dated March 2008.

### b.  Other Statements and Records

A representative example of other statements and records setting forth the activities of government offices is PX-71, which consists of slides presented by Brigadier General Kevin Bergner in connection with a press briefing on July 2, 2007. This category also includes the Exhibit A to the Clawson Declaration (a report prepared by MNF-I analyzing the "Hezbollahization" of Iraq) and Exhibit B to the Bauer Declaration (an order from the New York Department of Financial Services ("DFS") against Standard Chartered Bank and reflecting findings from a legally authorized investigation by DFS).

### 8.  Defense Department Weekly Reports Are Government Records Admissible Under Rule 803(8).

Plaintiffs seek admission of five exhibits comprising Defense Department weekly reports from the MNF-I Commander to the Secretary of Defense ("SECDEF weeklies") setting forth the activities of the U.S. military in Iraq, political and economic updates, matters observed by military personnel with a duty to report them, and factual findings from legally authorized investigations. These exhibits are listed in Duprey Decl. ¶¶ 127-31. A representative example of these records is PX-104, which consists of SECDEF weekly updates for March 17 to March 23, 2007.

### 9.  FinCEN Advisories and Rules

FinCEN, a bureau of the U.S. Treasury Department, operates according to statutory and regulatory authorities, and duties delegated to it by the Treasury Department. Its operations include issuing rules, administrative rulings, advisories and "Special Measures for Jurisdictions, Financial

Institutions, or International Transactions of Primary Money Laundering Concern," pursuant to Section 311 of the USA PATRIOT Act. Plaintiffs offer several FinCEN advisories, a representative example of which is PX-223, and a FinCEN rule identifying Iran as a jurisdiction of primary money laundering concern, PX-226.

### 10. Factual Statements Included in Settlement Agreements and Consent Orders

Plaintiffs offer for admission factual statements prepared by the Treasury in a settlement agreement (PX-227) and the New York DFS in a consent order (PX-228). Although included in agreements with banks under investigation, the factual statements themselves are admissible as "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness," pursuant to Rule 803(8)(C). *See Option Res. Grp. v. Chambers Dev. Co., Inc.*, 967 F. Supp. 846, 850 (W.D. Pa. 1996).

Rule 408, which prohibits admission of evidence of offering or accepting "a valuable consideration in compromising or attempting to compromise the claim" and "conduct or a statement made during compromise negotiations about the claim" in order to prove the validity of that claim, does not prohibit admission of these statements. While "evidence of conduct of the parties or statements made *in the course of* those settlement negotiations, must be excluded by the plain language of this rule," as is the "fact of compromise and settlement," "the findings and opinions/conclusions of the [government agency], being rendered pursuant to the [agency's] independent obligations to enforce the … laws and not as a part of the actual compromise negotiations, are not governed by Rule 408." *Option Res. Grp*., 967 F. Supp. at 849-50. The factual statements in these records reflect legally authorized investigations.

**B.**      **Exhibits Admissible Pursuant to Fed. R. Evid. 803(9)**

Vital records, including a "record of a birth [or] death, … if reported to a public office in accordance with a legal duty," are admissible. Plaintiffs seek to admit the following vital records, which were prepared by public offices in accordance with applicable duties:

A. Birth certificates (Duprey Decl. ¶¶ 138, 140-42, 144-46, 148-51, 153-55). Birth certificates establish citizenship as required under 28 U.S.C. § 1605A(a)(2)(A)(ii) and 28 U.S.C. § 1605A(c)(1).

B. Death certificates (Duprey Decl. ¶¶ 139, 143, 147, 152). Death certificates establish that a victim died as a result of an attack.

**C.**      **Expert Reports**

Plaintiffs offer the liability expert reports into evidence (and will offer medical expert reports as to damages at a later stage, *see* Oct. 16, 2020 Minute Order). Expert opinion often takes on a central role in default FSIA cases. This Court "[r]ecogniz[ed] that expert testimony is not only entirely proper, but often sufficient, and even indispensable in 'terrorism cases ... because firsthand evidence of terrorist activities is difficult, if not impossible to obtain.'" *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 57 (D.D.C. 2018) (citing *Owens*, 864 F.3d at 787-88). *See also Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 78 n.12 (D.D.C. 2011) ("In cases involving the state sponsor of terrorism exception to the FSIA, courts rely extensively on expert testimony.").

The *Karcher* court admitted all of the reports offered for admission in that case, which include all of the expert reports offered here except for the reports of Dr. Clawson and Ms. Bauer, which are particular to the Defendants here. The *Karcher* court did so after each of the experts adopted their (unsworn) reports on the stand under oath; here, the reports of Dr. Clawson and Ms. Bauer are sworn declarations. Likewise, the *Fritz* court admitted two expert reports into evidence, in addition to expert testimony given at trial. *See id.* at 58 n.2 ("The Court also admitted Dr.

17

Levitt's expert report, Ex. 65, and Dr. Gartenstein-Ross's expert report, Ex. 66, into evidence.").

*See also Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 705 (7th Cir. 2008) ("The district court did not abuse its discretion in admitting" an expert declaration that was "detailed, concrete, and backed up by a host of exhibits"); *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 16 (D.D.C. 2016) (relying on expert reports in a default FSIA case).

Plaintiffs seek admission of nine expert reports, which are each detailed, concrete, and backed up by dozens of exhibits:

- PX-153, the Expert Report of Lieutenant General (Ret.) Michael Oates, a liability expert report regarding the role of the IRGC and Hezbollah in creating and sustaining Iraqi Shi'a militias (called the "Special Groups" by the U.S. military), including by financing, supplying, training, and arming them.

- PX-154, the Expert Report of Dr. Matthew Levitt, a liability expert report regarding Iran's material support to terrorism, including its use of the IRGC, Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF") and Hezbollah as instruments of its terrorist activities in Iraq between 2003 and 2011.

- PX-155, the Expert Report of Michael Pregent, a liability expert report encompassing an overview of the role of the IRGC and Hezbollah in supporting terrorist attacks in Iraq between 2003 and 2011, and an assessment of Iran's responsibility for the January 20, 2007 attack in Karbala, Iraq.

- PX-156, the Expert Report of Colonel (Ret.) Leo Bradley, a liability expert report regarding the development of MNF-I Explosive Ordnance Disposal capabilities, its tools to investigate IED/explosively formed penetrator ("EFP") seizures and attacks, and findings that EFPs were linked to Iran.

- PX-157, the Expert Report of Russell McIntyre, a liability expert report regarding the development of MNF-I intelligence regarding Iran's and Hezbollah's development of Special Groups in Iraq and orchestrating attacks on MNF-I forces, including through the use of EFPs.

- PX-158, the Expert Report of Captain (Ret.) D. Wade Barker, a liability expert report regarding forensic analysis of specific bellwether EFP attacks in Iraq and the technical aspects of designing, manufacturing, and detonating EFPs.

- PX-159, the Expert Report of Colonel (Ret.) Kevin Lutz, a liability expert report regarding forensic analysis of specific bellwether EFP attacks and the attribution of such attacks to Special Groups trained and supplied by Hezbollah and the IRGC-QF.

- The sworn expert declaration of Dr. Clawson, a liability expert on the Defendants' role in financing the IRGC's and Hezbollah's campaign of terrorist attacks on U.S. forces in Iraq.

- The sworn expert declaration of Katherine Bauer, a liability expert on the methods employed by Defendants to move billions of dollars through the global financial system, including moving billions in U.S. dollars through the United States, in significant part for the benefit of the IRGC and Hezbollah.

### D.   Testimony

Plaintiffs offer the following sworn statements, in addition to the expert reports described above:

A. Testimony from the three-day trial in *Karcher* (testimony volumes T1-T5).

B. The sworn declaration of William Rabena made in *Karcher* and *Hake*, PX-174, who investigated the January 20, 2007 Karbala attack.

C. The sworn declaration of Col. (Ret.) Kevin Farrell made in *Karcher*, PX-125, who witnessed the May 3, 2005 attack (not offered for admission in *Karcher* given Mr. Ferrell's testimony at trial; however, Mr. Barker referenced Mr. Farrell's declaration during his testimony at trial).

### E.   Photographs and Videos

Plaintiffs offer for admission photographs and videos (others are included in the next category but may be admissible here). These fall into three categories.

- First, certain Plaintiffs and witnesses have provided photographs and videos of bellwether attacks or their aftermath. These include PX-95, PX-100, PX-126, PX-135, PX-136, and PX-179. As identified in the Duprey Declaration, some of these photographs were also admitted during the *Karcher* trial, but all of them bear indicia of accuracy and have been reviewed and relied upon by Messrs. Barker and Lutz in analyzing the attacks.

- Second, a video relating to the use of EFPs, including a test fire (PX-58).

- Third, videos composed of satellite imagery and animation showing how certain bellwether attacks occurred (PX-87 and PX-121).

### F.   Business Records

The Bauer Declaration includes four exhibits that are admissible as "Records of a Regularly Conducted Activity," pursuant to Fed. R. Evid. 803(6). These records include three excerpts from

business records produced by third-party banks in this action (Bauer Exhibits D, E, and F) and an audit report commissioned by Standard Chartered Bank (Bauer Exhibit C) published in another action, *Freeman v. HSBC Holding*, No. 14-cv-6601-PKC-CLP (E.D.N.Y. Aug. 17, 2016), ECF No. 115-1.[4] These records, which reflect (or in the case of Bauer Exhibit C, summarize records that reflect) international, U.S. dollar-denominated transactions processed by the third-party banks. Pursuant to the business records exception, these records were made (or summarize records that were made) (1) contemporaneously by someone with knowledge, (2) in the course of a regularly conducted activity of the banks (processing transactions), and (3) as a regular practice of that activity. In lieu of testimony from a custodian, the Duprey Declaration certifies the source of these records. No opponent has "show[n] that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E).

### G. Statements Made Against Penal Interest and/or by Party Opponents' Conspirators

A number of Plaintiffs' exhibits or statements within Plaintiffs' exhibits are admissible as statements made against the speaker's penal interest, such as admission of membership in a terrorist group or of a role in attacks on U.S. forces. *See, e.g.*, *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, 339-41 (E.D.N.Y. 2015), *vac'd on other grounds*, 882 F.3d 314 (2d Cir. 2018) (explaining at length that claims of responsibility by terrorists are admissible statements against penal interest, notwithstanding other motivations terrorists *could* have to lie, and citing expert testimony showing that terrorist groups may prefer to avoid the loss of credibility if exposed in a lie). Statements admitting roles in terrorist groups or claiming responsibility for attacks are

---

[4]    The audit report, which acknowledges illegal transactions performed on behalf of Iranian entities including Defendants, is also admissible under the category for statements against penal interest/statements of co-conspirators.

corroborated by other evidence, including the expert evidence cited by Plaintiffs. *Id.* (noting corroborating evidence).

Items in this category include the videos and website captures listed in section 15 of the Duprey Declaration. Some evidence, such as videos of attacks, include other indicia of reliability. For instance, PX-82, in which AAH claimed responsibility for the January 20, 2007 Karbala attack, was admitted in *Karcher* because it had "internal and external indicia that it was produced by AAH," 396 F. Supp. 3d at 50 (quoting *Fritz*, 320 F. Supp. 3d at 71), including an "AAH symbol," *id.* (citing Mr. Pregent's testimony). Finally, statements within exhibits in other categories, such as reports from interrogations of detainees captured by Coalition Forces in Iraq (section II.A.4, *supra*), may also be admissible on these grounds.

Many of these statements are also admissible as statements "made by the [Defendants'] coconspirator[s] during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). *See United States v. Gewin*, 471 F.3d 197, 202 (D.C. Cir. 2006) (holding out-of-court statements admissible even if made in furtherance of "lawful joint enterprise"). These co-conspirators are leaders in Hezbollah and the Iraqi Special Groups, which are part of the conspiracy to operate and finance a campaign of terrorist attacks in Iraq against U.S. forces. Exhibits in this category include claims of responsibility such as PX-82 (and PX-82A, an excerpt), videos featuring Hezbollah Secretary General Hassan Nasrallah, Iraqi Special Groups leaders Abu Mahdi al-Muhandis (PX-122) and Qais Khazali (PX-119), and other Special Groups members (PX-116), captures from Special Groups websites (PX-117-118), and the captured journal of Hezbollah senior operative Ali Mussa Daqduq (PX-103). As mentioned above, statements in other categories, such as statements made during interrogation, fit into this category as well.

## III.  EXHIBITS PRESENTED TO COURT BUT NOT FOR ADMISSION

Plaintiffs also offer a number of exhibits for the Court's review, but not for admission.

These fall into three categories:

A. Demonstrative exhibits (PX-127, PX-180, PX-181, PX-183, PX-184, PX-185, PX-186, PX-187, PX-189, PX-192, PX-193, PX-194, PX-195, PX-196, and PX-198), which assist the Court's review of testimony and the other exhibits and expert reports.

B. Exhibits (*see, e.g.*, PX-14, PX-15, PX-89) properly relied upon by the experts, regardless of whether they are themselves admissible, pursuant to Fed. R. Evid. 703.

C. Items not offered for their truth, such as videos. For instance, PX-29, a video of Hezbollah secretary general Hassan Nasrallah leading chants that demonstrates Hezbollah's animosity toward the United States (not the truth of the chants).

### CONCLUSION

Given the broad approach to admissibility set forth by the D.C. Circuit Court of Appeals in *Owens* and the reasons set forth herein, Plaintiffs respectfully request that the Court admit into evidence the documents identified in the Duprey, Oates, and Bradley Declarations, and the expert reports delineated herein.

Dated: November 16, 2020

Respectfully submitted,

OSEN LLC

By:   /s/ Gary M. Osen
Gary M. Osen (DC Bar No. NJ009)
Ari Ungar (DC Bar No. NJ008)
Michael J. Radine (DC Bar No. NJ015)
Patrick J. Duprey (DC Bar No. NJ029)
2 Univesity Plaza, Suite 402
Hackensack, NJ 07601
(201) 265-6400

TURNER & ASSOCIATES, P.A.

C. Tab Turner
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277

Attorneys for Plaintiffs